# *Financial Investigative Services*

White-Collar Crimes | Mortgage & Real Estate Expert

*(858) 336-0520 | FISIntel.com*

## EXPERT AFFIDAVIT AND REPORT OF CURTIS L. NOVY

Date of Report: 7/8/2025

Plaintiff: IGOR ZORIN

Defendants: SVYATOSLAV MANGUSHEV, TRUMP PALACE 2021-5507, LLC, OLGA GALANTER, YURI BATURENKO, SCOTT S. LEVINE, VADIM YUSHKEVICH

Case #: 2024-022852-CA-01 | 2024-004770-CA-01

SUBJECT PROPERTY: 18101 COLLINS AVE, UNIT 5507, SUNNY ISLES, FL

BUSINESS ENTITY: TRUMP PALACE 5507, LLC (hereinafter TP 5507, LLC).

---

## PREAMBLE

I, Curtis L. Novy, prepared and signed this affidavit and report. I attest, under oath, to the findings and opinions herein based on my 30 years of experience in nationwide mortgage underwriting, complex fraud and financial investigations, and as a Certified Fraud Investigator.

My full name is Curtis L. Novy. I am over the age of 21 years, and I am a resident of Indian Wells, CA. I have personal knowledge of the facts herein and I am competent to make this affidavit.

## EXPERT QUALIFICATIONS

Collectively, I have over 30 years' experience in all facets of commercial and residential mortgage lending, including: audit & quality control, bank fraud examination, credit risk management, document forgeries, complex financial crimes investigations, and 15 years of documented mortgage underwriting authority.

I have received in-depth bank training in Florida real estate lending practices and am currently retained by Florida title companies/closing agents to identify fraudulent deed and corporate entity transfers as well as real estate fraud. I have testified in Florida federal criminal court related to complex mortgage fraud, underwriting standards, and closing/title practices.

While employed with Wells Fargo Bank's Private Banking unit, I earned a nationwide credit risk management certification and maintained a $1 million lending authority. As a senior underwriter at Wells Fargo, I approved $30 million to $50 million in loans each month. My employment with other major financial institutions included Bank of America, Fairway Independent Mortgage, and Mutual of Omaha Bank.

In addition, I have held senior level audit and fraud examination positions with banks and financial institutions. I served as a liaison with bank regulators to report credit risk and filed Suspicious Activity Reports (SARS) with the Financial Crimes Enforcement Network (finCEN).

I have been retained as a consultant or expert witness on over 225 civil and criminal fraud cases nationwide over the past 15 years and testify in state and federal courts. My consulting assignments focus on banking, complex fraud investigations, escrow/title standards and practices, mortgage underwriting, and sham real estate transactions. I train law enforcement agencies and district and state attorneys to detect complex fraud schemes and served as a fraud conference speaker in May of 2025.

I am the chief real estate fraud investigator and lending industry consultant for my company, Financial Investigative Services (FIS). Governmental agencies and municipalities retain me to conduct sensitive investigations related to employee fraud and internal theft. I often focus on fraudulent deed transfers & schemes, document forgeries, elder financial abuse, notary fraud, white-collar crimes, and real estate fraud.

I hold a Certified Fraud Investigator's credential (CFI). To qualify for my CFI credential, I was required to pass a competency exam and provide my credentials to the organization's board of review for verification. Every three years I am required to retake and pass the qualification exam and provide proof of continuing education. I was recertified in 2025.

2

Each year, I obtain 50+ hours of education and training from the Association of Certified Fraud Examiners, Association of Certified Anti Money Laundering Specialists, and International Association of Financial Crimes Investigators.

To join nationwide confidential banking and law enforcement working groups, I was required to verify over 6,500 hours of financial investigative training and fraud examination experience. After passing a background examination, I was granted access to sensitive law enforcement agency communications that track suspects wanted for financial crimes.

In addition, I provide fraud investigation webinar training to law enforcement and have authored mortgage fraud training certification programs. During the financial crisis of 2008, I established the popular website, MortgageFraudTaskForce.com to assist law firms and law enforcement to share information.

I am the owner of a private consumer protection website and fraud reporting portal, FinancialCrimesNetwork.com, to assist victims of financial crimes. The site provides law enforcement networking and a referral source to state/federal agencies to report and recover stolen funds for consumers.

Based on my experience, I have been granted access to INTERPOL's international crime database after a passing a stringent background investigation and credential verification process. Very few private sector investigators are granted access to this secure governmental portal.

I recently updated the California Financial Crimes Investigators Association (CFCIA) fraud guide and exam questions for the organizations' certification program. The CFCIA requires stringent training and a proctored examination issued annually at CFCIA's conference. Banking and law enforcement obtain certification to assist them in detecting and prosecuting mortgage and real estate fraud. I have recently been asked to revise the CFCIA's elder abuse training guide.

During monthly CFCIA member calls, attended by bank fraud examiners, DA fraud investigators, and local FBI field agents, I am often asked to explain emerging real estate fraud schemes and offer investigative advice and best practices.

To maintain my high level of continuing education and training, I attend multiple in-person conferences each year. I have been asked to provide training at upcoming summer conferences and training events.

In summary, I have analyzed, investigated, and underwritten more than 10,000 transactions during my career. My Curriculum Vitae, including a list of depositions and trial testimony, is attached to this affidavit and report and incorporated herein by reference.

## EXPERT ASSIGNMENT

I was retained by Wolff Law, P.A. on or about 9/24/2024 on behalf of the Plaintiff, Mr. Igor Zorin, to utilize my career experience and professional training as a nationwide mortgage underwriter, Certified Fraud Investigator, and financial investigator and auditor to provide expert witness services. My compensation, findings, and opinions are not contingent on a particular outcome or desired result of this litigation.

I have been asked to form professional opinions related to the correlation between the core participants, including: Defendant Mangushev, Defendant Baturenko, Defendant Levine, Defendant Galanter, Defendant Yushkevich, Alexander Domb, and the various entities owned, controlled, or utilized by Defendant Mangushev.

I have been tasked with reviewing discovery in the case (hereinafter the "case file") to identify mortgage fraud, financial fraud, banking fraud, corporate fraud, money laundering, payment of monetary kickbacks, and wire fraud. I was asked to opine as to how the fraud was accomplished based on my training and professional experience as a mortgage underwriter and Certified Fraud Investigator, identify all parties who are connected to, participated in, and provided substantial assistance to effectuate the fraud scheme, and to cite specific instances and red flags indicative of fraud.

In addition, I was asked to evaluate mortgage, banking, and lending underwriting due-diligence customs, standards, and practices, and to "follow the money trail" to determine the beneficiaries of the fraudulently obtained funds flowing from the Subject Property to accounts and corporate entities controlled by Defendant Mangushev. As I followed the money trail, I identified co-conspirators who Mr. Mangushev utilized to further his fraud scheme.

## MATERIALS REVIEWED AND FORMATION OF OPINIONS

In forming my opinions, I reviewed case discovery, court filings and exhibits, deposition transcripts, Sunbiz.org entity filings, communications between the Defendants, the closing file, NP, Inc.'s mortgage documents, bank statements, checks, and banking records.

I independently obtained public title records, Sunbiz.org filings, Fl real estate licensing records to validate the documents provided to me. I also analyzed lender loan documents, closing and title records, and lender records. I also reviewed the procedures of the title insurer and closing attorney. I also personally interviewed Mr. Zorin via a phone call.

In addition, I reviewed Mr. Zorin's affidavit, the affidavit of Gennady Alekseenko, the affidavit of Inessa Pozdnyakova, the affidavit of Marina Radkevich, the purported notary to the fraudulent Assignment of Limited Liability Company interest, the affidavit of Hector Suarez, the Broward Circuit Court's Final Judgment in CACE17000351, the quitclaim deeds prepared by Defendant Galanter, the affidavit of Aleksey Vetoshkin, translated bankruptcy records for Alpha-Anticriminal, LLC in Moscow, Russia, among other discovery and filings within the case file.

Additional documents were provided to me that detailed the transfer and diversion of the Subject Property's equity proceeds to an account opened by and solely owned by Defendant Mangushev, which said proceeds were then laundered into separate entities and real estate investments controlled by Defendant Mangushev with the assistance of Defendant Galanter and Defendant Levine. I then updated my investigation by independently verifying transaction documents with public records.

I have attached exhibits to support my opinions. A timeline of events and transaction details are included to assist the Court in understanding the intertwining parties who participated in and provided substantial assistance to effectuate the fraud.

Last, I reviewed the affidavit and expert report issued by Mr. Robert M. Schwartz, ESQ. to help me understand Florida real estate transactional due diligence requirements, responsibilities, title standards, and customs and practices.

My consulting rate for expert witness services, including consulting, depositions, and trial testimony, is $650.00 per hour. I have not used any AI in the preparation of this affidavit and report. I reserve the right to amend this affidavit and report based on the receipt of new discovery or information.

My report may be released to Florida licensing and law enforcement agencies to assist in possible criminal investigation and prosecution. Discovery is ongoing, and I reserve the right to amend or supplement my opinions as the case progresses given the receipt of new information, evidence, and/or testimony.

## TIMELINE OF EVENTS & TRANSACTIONS

18101 Collins Ave, # 5507, Sunny Isles, FL

---

**Subject Property Purchase Background: Scott S. Levine | Igor Zorin**

- **On 3/6/2013,** Mr. Zorin purchased the Subject Property for $2,320,000.00. Mr. Zorin, through the entity, Trump Palace 5507, LLC (TP 5507), created by Defendant Levine, acquired the condo unit for cash. According to the discovery, closing documents, and public records, the 2013 purchase was an arm's length transaction. In other words, the transaction involved a buyer and seller who were not affiliated or related and adequate consideration was paid. Title insurance was obtained to protect Mr. Zorin as to matters impacting clear title. The sellers were Christos and Stella Spyropoulos who originally purchased the property in 2009. I did not identify any red flags or title deficiencies associated with the 2013 purchase. The case file indicates that Defendant Levine represented Mr. Zorin for the 2013 purchase, formed the business entity, TP 5507, LLC on his behalf, and signed the closing statement on behalf of Mr. Zorin pursuant to a power of attorney. From 2013 through 2019, the case file and public records and filings indicate that Mr. Zorin continued to be the sole member and manager of TP 5507, LLC. Public records indicate that Mr. Levine maintained a long-term attorney-client relationship as counsel for Mr. Zorin, including acting on his behalf in other real estate transactions, acting as attorney in fact for Mr. Zorin, filing lawsuits on Mr. Zorin's behalf in 2015, and even acting as escrow agent for Mr. Zorin in 2019. In addition, Mr. Levine was regularly involved and remained as registered agent for TP 5507, LLC from 2013 to 2020 according to Sunbiz annual reports, and once again represented Mr. Zorin in other FL real estate transactions. Mr.

Levine's long-term history and direct knowledge of his client, Mr. Zorin, set the underlying foundation for a well-executed fraud scheme to unfold.

---

**Lease Extension/Tenant Purchase - Fraudulent Acknowledgement of Terms for Purchase of Real Estate: | Olga Galanter | Scott S. Levine | Svyatoslav Mangushev**

- **On 2/26/2019,** Mr. Zorin signed an "As Is Residential Contract for Sale and Purchase" on behalf of TP 5507, LLC to sell the Subject Property to tenant Robert Graybill (Murfreesboro limited 20 LLC). According to the Contract, Scott Levine served as the escrow agent, and Vadim Yushkevich acted as the broker through the entity Alpha Realty, LLC. According to the Contract, the closing was to occur on June 15, 2019.

- **On 5/7/2019,** an "Addendum to Lease" was negotiated by Defendant Levine, who represented Mr. Zorin as "attorney for landlord." According to the document, Defendant Levine accepted a purchase earnest money deposit (EMD) of $100,000.00 from Mr. Zorin's existing tenant, Mr. Graybill, into his trust account. The tenant failed to close but Defendant Levine did not file suit against the tenant/purchaser for specific performance or compel the sale. Instead, Defendant Levine converted the EMD trust funds into a rental lease extension agreement for the benefit of Mr. Graybill who received a $100,000.00 credit towards his rental of the Subject Property held by TP 5507, LLC.

- **On 7/10/2019,** Defendant Mangushev sought to become the purchaser of TP 5507, LLC and/or the Subject Property. Defendant Galanter drafted a suspicious two-page document titled "Acknowledgment of Terms for Purchase of Real Estate" on Defendant Mangushev's behalf and transmitted this document via email to Defendant Mangushev's email address 3367558@gmail.com, with alias "Steve Smith," stating: "Svyatoslav, once again I apologize for the delay, I am attaching the documents." The use of a fake name or alias ("Steve Smith"), along with an email address containing solely numbers and no other identifying information, is indicia of potential fraud.

- **On 7/11/2019,** Defendant Mangushev forwarded the two-page document titled "Acknowledgement of Terms for Purchase of Real Estate" to Mr. Zorin's email address izorin2007@gmail.com.

- **On 7/11/2019,** Mr. Zorin forwarded the two-page document titled "Acknowledgment of Terms for Purchase of Real Estate" to Defendant Vadim Yushkevich's email address oceanicfinancial@comcast.net, requesting that it be sent to Defendant Levine for "Scott's evaluation…to see if the seller's interests are sufficiently protected." The Acknowledgment required that $580,000 be paid by Defendant Mangushev upon execution, that $1,740,000 be paid by Defendant Mangushev no later than July 10, 2020, and that should the sale not occur by July 10, 2020, Igor Zorin would be released from the obligation to sell the subject property to Defendant Mangushev or his affiliates.

- **On 7/22/2019,** Defendant Yushkevich emailed Defendant Levine the Acknowledgment stating "Please review and contact Olga with any questions. ***You represent Igor***. Olga prepared the papers per Slava Request." The use of the Acknowledgement instead of a standard form As Is Purchase and Sale Real Estate Contract (like the February 2019 contract between Zorin and his tenant) is a deviation from standard real estate purchase and sale customs and practices, is unusual, and considered a red flag. For example, use of a standard form As Is Purchase and Sale Real Estate Contract would have clearly identified the parties, all sale terms, a specified closing date, and identified broker/counsel agency representation. The bypassing of a Florida real estate approved form by both attorney Galanter and Attorney Levine is suspicious, and an indicia of potential fraud.

- **On 7/29/2019,** Mr. Zorin emailed a signed copy of the Acknowledgement dated July 29, 2019, and an undated Amended and Restated Operating Agreement to Defendant Mangushev's email address 3367558@gmail.com. The Acknowledgement does not contain witness names and signatures (even though there is a space for same) and the signatures are not notarized – further potential indicia of fraud. The Amended and Restated Operating Agreement did not contain a page 13, does not contain any schedules of description of capital contributions or ownership interests. No assignment of interest, waiver of notice of special meeting, minutes of special meeting are included in the package of documents sent by Mr. Zorin on July 29, 2019 to Defendant Mangushev's email

address 3367558@gmail.com. A dissociation document is included in the package, which is also unusual given that an owner would not typically resign from his company or surrender his interests until full payment was made by the purchaser. Defendant Galanter testified that she does not know whether a contract for the purchase or sale of Mr. Zorin's membership interest or the Subject Property was ever executed. Defendant Galanter testified that it was always her understanding that the purchase or sale of Mr. Zorin's membership interest and the Subject Property would have to be papered separately. Defendant Galanter further testified she had no knowledge whether Defendant Mangushev paid the initial $580,000 upon execution of the Acknowledgment.

- **On 7/29/2019 – 7/10/2020,** According to Defendant Mangushev's sworn discovery responses, he did not make the downpayment of $580,000 to Mr. Zorin upon execution of the Acknowledgment as stated on page 1 of the Acknowledgment. No documentary evidence of this downpayment is in the case file I reviewed. No checks, no wire transfers, no receipts, no deposit slips, nothing. Failure to pay the downpayment is consistent with a fraud scheme. The Acknowledgment also states that Defendant Mangushev was required to pay the balance of $1,740,000.00 by 7/10/2020 or Mr. Zorin would be "released from his obligation to sell the Subject Property." Again, there is no documentary evidence I have reviewed confirming the balance payment was ever made to Mr. Zorin by Defendant Mangushev or anyone else on his behalf. Defendant Galanter and Defendant Levine both testified they had no information or knowledge whether any payments were ever made by Defendant Mangushev to Mr. Zorin per the Acknowledgement. An affidavit provided by Defendant Mangushev claims that equity from a series of prior transactions were utilized to provide the down payment and balance payment of funds. However, based on my review of the translated contract of the pre-dated transaction that does not name or involve Mr. Zorin, as well as Defendant Mangushev's discovery responses, there is no documentary evidence supporting Defendant Mangushev's claims. This is further indicia of fraud.

- **On 8/9/2019,** Sunbiz records and Linked2pay records reflect that Defendant Galanter paid for and filed an Amended Annual Report with Sunbiz adding Defendant Mangushev as a Manager of TP 5507, LLC just days after the Acknowledgment was executed. However, Defendant Galanter testified she had no knowledge whether Defendant Mangushev ever made the required $580,000

down payment at the time she filed this amendment or the remaining balance payment of $1,740,000.00. There is no documentary evidence in the case file I reviewed that Mr. Zorin consented to Defendant Mangushev being added as a Manager of TP 5507, LLC without any payment being made.

---

**The Fraudulent Mortgage Loan: | Svyatoslav Mangushev | Yuri Baturenko**

- **On 11/27/2019,** Defendant Mangushev applied for a loan with NP, Inc. secured by the Subject Property posing as the true owner and new corporate interest holder. At the time Defendant Mangushev applied for this loan, there was no documentary evidence in the case file in the form of checks, deposit slips, wire transfer receipts, or bank statements certifying to the lender that the $580,000 down payment and remaining balance of $1,740,000.00 had been paid to Mr. Zorin subsequent to the execution of the Acknowledgment. This is consistent with a mortgage fraud scheme to deceive the lender.

- **On 12/5/2019,** Defendant Mangushev forwarded the signed copy of the Acknowledgement dated July 29, 2019, and an undated Amended and Restated Operating Agreement to Defendant Baturenko's email address, baturenchik@gmail.com.

- **On 12/6/2019,** Defendant Mangushev, with the assistance of The Vanguard Mortgage, LLC, the Loan Origination Company (incorporated by Defendant Baturenko and Defendant Mangushev in 2017), executed the fraudulent Loan Application with NP, Inc.

- **On 12/6/2019,** within the Loan Application, Defendant Mangushev's disclosures raised several mortgage fraud red flags. For example, Defendant Mangushev certified:
    - He had only ".01 of monthly income" at the time.
    - He "acquired the Subject Property on February 21 2013," then later certified in his occupancy certification that he acquired the property on "April 26, 2019," months before the Acknowledgment was even drafted by Defendant Galanter or signed by Igor Zorin;
    - He had only "$60,000 in cash and liquid assets" at the time.
    - His net worth was negative $989,208.00 including the Subject Property.

- He was not involved in any "pending litigation," even though Miami Dade and Broward County public records confirm Defendant Mangushev was in litigation involving several properties that he and Defendant Galanter Quit Claim deeded in a similar scam.
- He was the "owner" of Alpha Realty, LLC, a real estate brokerage owned by Defendant Yushkevich, despite Defendant Mangushev possessing no real estate licenses in the state of Florida.

According to the loan documents, Mavent internal banking fraud reports designated the loan status as "ALERT," by indicating that the loan originator, Yuri Baturenko, was not associated with the NMLS Id on file, that invalid preapproval data was provided, and an invalid debt-to-income ratio was reported. There was also an unsigned, unwitnessed "quitclaim deed" dated January 10, 2020, included in the mortgage application from TP 5507, LLC to Defendant Mangushev individually. All of the above are significant red flags and indicia of fraud.

- **On 12/6/2019,** within the Loan Application, Defendant Mangushev also provided several fraudulent and forged documents. These documents include and are not limited to:
  - a fake/fraudulent lease agreement dated August 10, 2019 with non-existent tenants Veranika Valchok and Siargei Haroshka (who the Association has no record of according to the Affidavit of Hector Suarez). This is a red flag an inquiry with the Association would have revealed.
  - a fake/fraudulent backdated (April 25, 2019) Acknowledgment substantially different than the Acknowledgment signed by Mr. Zorin on July 29, 2019, including two purported witness signatures, one of which, Siargei Haroshka, was the non-existent tenant, whose signature is completely different than Haroshka's signature on the fake lease agreement. This signature and handwriting discrepancies are a significant red flag. Please Refer to the Expert Report of Khody Detwiler for further support.
  - a fake/fraudulent and backdated Assignment of Limited Liability Interest with a fraudulent notarization. Marina Radkevich the notary, confirmed in her sworn Affidavit she never notarized or signed the Assignment, and according to Mr. Zorin's affidavit, it was executed on a date that Mr. Zorin was not even in the United States. Another fake witness "Vladimir Mandrukevich" is included. This is a clear red flag and indicia of fraud.

- ▪ a fake/fraudulent and backdated Waiver of Notice of Special Meeting purportedly held on April 26, 2019, at the Subject Property, on a date Mr. Zorin was not in the United States.
- ▪ a fake/fraudulent backdated Minutes of Special Meeting signed by Defendant Mangushev.

- **On 12/6/2019,** within the Loan Application, Defendant Mangushev wrote a "Letter of Explanation" and "Certification of Business Purpose" where he certified he would be utilizing the proceeds from the mortgage of the Subject Property to purchase the multifamily apartment complex located at 201-213 NE 4 Court # 1-7, Hallandale Beach, FL, and collect the rental income therefrom.

- **On 12/6/2019,** Defendant Yushkevich provided Defendant Mangushev with the EIN for TP 5507, LLC via text message.

- **On 12/17/2019,** while the mortgage application was pending/processing, Defendant Baturenko filed an amendment to the articles of TP 5507, LLC with Capital Connection, removing Mr. Zorin as a member of TP 5507, LLC. The mortgage broker's direct connection to the corporate amendment is a significant red flag and was obvious to the public on the face of the document in public records.

- **On 12/18/2019,** while the mortgage application was pending/processing, Defendant Mangushev opened a bank account with BB&T Bank for TP 5507, LLC listing himself as "Manager," and deposited $100.00.

- **On 1/23/2020,** The Vanguard Mortgage, LLC received $13,920 in fees as broker associated with the mortgage of the Subject Property. Sunbiz Records list Defendant Baturenko as the authorized member of the company at the time.

- **On 1/23/2020,** Defendant Mangushev's BB&T Bank account in the name of TP 5507, LLC received a wire transfer of the mortgage proceeds from the Subject Property in the amount of $1,346,535.38.

- **From 1/23/2020 to 1/30/2020,** Defendant Mangushev transferred $1,280,000 in embezzled funds from the TP 5507, LLC account to the Mangushev Irrevocable Trust account, with Defendant Mangushev listed as Trustee and sole signatory

12

for the account. At the time of the transfer, the Mangushev Irrevocable Trust account only had a balance of **$26,645.32**. Over $1.3 million in wire transfers in and out of a newly opened account constitute suspicious activity. The bank is required to flag and report this unusual and high-dollar activity via a suspicious activity report (SAR), filed with the Financial Crimes Enforcement Agency (finCEN).

- **From 1/23/2020 to 1/30/2020**, Defendant Mangushev transferred $10,000 to 1200 Federal LLC's account, $10,000 to The Imperial, LLC's account, $20,000 to Sky Synergy LLC's account, $3,000 to Olympians LLC's account, $5,000 to Limar, LLC's account, $10,000 to Trump Palace 5102, LLC. Defendant Mangushev is listed as manager and sole signatory of all these accounts according to Truist Bank/BB&T's bank records. Please see the summary flowchart below of transactions in ***January 2020***.



- As reflected in the flowchart above, in January 2020, Defendant Mangushev also wrote tens of thousands of dollars to himself in checks from the Mangushev Irrevocable Trust once the mortgage proceeds were deposited into the Mangushev Irrevocable Trust. Mangushev paid himself $7,500 on **1/31/2020**, $20,000 on **1/30/2020**; $7,500 on **1/23/2020**, and $250,000 on **1/24/2020**. The bank statements for 1200 Federal, LLC, Imperial, LLC, Sky Synergy, LLC, Olympians, LLC, 1200 Federal LLC, and Limar, LLC all reflect transfers to and from the Mangushev Irrevocable Trust, confirming these entities are all interrelated and appear to be funded by the Mangushev Irrevocable Trust's receipt of the fraudulent mortgage proceds.   The structure of Defendant Mangushev's entities and the transactions by Defendant Mangushev are consistent with money laundering. Please see the attached Addendum summarizing the flowing of the mortgage proceeds through Defendant Mangushev's accounts based on the bank statements, checks, and wire transaction receipts provided by Truist Bank/BB&T Bank.

- **On 1/24/2020,** the day after the mortgage funds from the Subject Property were received, Defendant Mangushev wrote a check/kickback payment in the amount of $50,000 to Alpha Realty (Defendant Yushkevich's real estate brokerage).

- According to Sunbiz.org, Defendant Galanter was added as registered agent for 1200 Federal LLC in 2020 and changed the name to "Biscayne LLC." Name changes to several of Defendant Mangushev's entities is consistent with the fraud scheme. Defendant Galanter served as registered agent for 1200 Federal LLC a/k/a Biscayne LLC from 2020 to 2021.  Defendant Galanter was also added as the registered agent for the Imperial LLC in 2020 and 2021, and Defendant Galanter incorporated Olympians LLC in Florida in 2020, listing the address as the 201 NE 4th Ct – the same property detailed in Defendant Mangushev's Business Purpose Certification and Letter of Explanation to the mortgage lender, which was purchased with equity from the Subject Property as detailed later in this Report. Later, after the court order and final judgment issued 9/12/2023 related to Mangushev v. Alpha Team, LLC concerning two (2) other properties involving Mangushev and Galanter, Defendant Mangushev immediately began hiding/transferring assets by changing corporate ownership records to disguise and conceal his true ownership interests. This is consistent with Defendant Mangushev's long-term real estate and mortgage fraud schemes.

- Defendant Levine is listed as the registered agent for Trump Palace 5102, LLC from 2019 to 2020, which Defendant Mangushev changed the name to Warriors Boxing Gym, LLC on February 14, 2020. **On 2/21/2020,** Defendant Levine wrote a check in the amount of $24,265.00 from his trust account to Trump Palace 5102, LLC, which was deposited by Defendant Mangushev.

---

### Laundering of the Mortgage Proceeds | Scott S. Levine | Svyatoslav Mangushev | Olga Galanter | Yuri Baturenko

- According to The Olympus, LLC's bank statement dated January 2020, on January 22, 2020, there was $0.00 in the account. On January 24, 2020, $850,000 of the mortgage proceeds derived from the Subject Property were wired into The Olympus, LLC's bank account by Defendant Mangushev from Trump Palace 5507, LLC. On January 28, 2020, $800,000 was wired out of the Olympus, LLC toward the purchase of 201-213 NE 4 Court, Units 1-7, Hallandale Beach, FL, according to the Settlement Statement produced by Defendant Levine with a disbursement date of February 10, 2020. Vanguard Mortgage, LLC (incorporated by Defendant Mangushev and Defendant Baturenko), once again, received a mortgage origination fee of $10,750.00. Defendant Levine served as Settlement Agent, Escrow Agent, and attorney for the 201-213 NE 4 Court, Units 1-7, Hallandale Beach, FL purchase transaction. Defendant Galanter was also involved in this transaction, producing the Commercial Contract for the purchase and emails from Defendant Mangushev forwarding her documents related to the sale.

---

### Sham Sale of the Subject Property | Daniella Levi | IME Watchdog, Inc. | Scott S. Levine | Alexander Domb | Vadim Yushkevich |

- According to MLS records and text message correspondences, Defendant Mangushev utilized his confidant and frontman, Defendant Yushkevich, the true owner and licensed broker of Alpha Realty, LLC, to list the Subject Property and arrange an under-market sham sale to satisfy the mortgage debt and extract additional equity from the Subject Property. According to Defendant Yushkevich's discovery responses, no written listing agreement exists authorizing him to list the Subject Property on behalf of any seller for a specific price or specified period of time. **On 1/20/2020,** pre-pandemic, the property was

appraised by the lender, NP, Inc. at $2,540,000.00. However, just over a year later, Defendant Mangushev, with the assistance of Defendant Yushkevich and Defendant Levine, sold the Subject Property for $1,800,00.00 - $740,000.00 under market value.

The under-market sale despite the significant appreciation in real estate post pandemic is a key element in the sham sale.  Selling a property far under market value, in a stable and increasing market, is considered a common red flag pointing to fraud. In a sham sale scheme, acquiring a property far under market value allows the new purported owner to then flip the property for full market value and again profit.

- **On 2/14/2021,** with the assistance of Defendant Levine, Defendant Mangushev acting as the purported owner of the Subject Property sold the property to IME Watchdog, Inc. according to the AS IS purchase and sale contract.  The 12-page standard FL purchase agreement was purportedly executed by IME Watchdog, Inc. as buyer without identifying the principal's name. This is suspicious on the surface, as the purchase and sale contract does not indicate what individual on behalf of IME Watchdog, Inc. signed the agreement.  Further, the Seller is indicated as "Svyatoslav Mangushev" and not Trump Palace 5507, LLC - the actual owner of the Subject Property according to the Miami-Dade Property Appraiser.  In a real estate fraud investigation, one or two isolated red flags is not consistent with complex fraud. Five or more identified red flags is consistent with intentional, complex fraud.  Throughout my investigation, a clear pattern emerged as to individuals who did not pay attention to the fine details that fraud examiners focus on to detect fraud.

---

594    THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR.

595    Approval of this form by the Florida Realtors and The Florida Bar does not constitute an opinion that any of the
596    terms and conditions in this Contract should be accepted by the parties in a particular transaction. Terms and
597    conditions should be negotiated based upon the respective interests, objectives and bargaining positions of all
598    interested persons.

599    AN ASTERISK (*) FOLLOWING A LINE NUMBER IN THE MARGIN INDICATES THE LINE CONTAINS A BLANK
600    TO BE COMPLETED.

601*   Buyer: _IME Watchdog INC_____   Date: 2/14/2021_____

602*   Buyer: _____   Date: _____

603*   Seller: _Svyatoslav Mangushev_____   Date: 2/15/2021_____

604*   Seller: _____   Date: _____

605    Buyer's address for purposes of notice                Seller's address for purposes of notice
606*   Tba                                                   Tba
607*   _____    _____
608*   _____    _____

609    BROKER: Listing and Cooperating Brokers, if any, named below (collectively, "Broker"), are the only Brokers
610    entitled to compensation in connection with this Contract. Instruction to Closing Agent: Seller and Buyer direct
611    Closing Agent to disburse at Closing the full amount of the brokerage fees as specified in separate brokerage
612    agreements with the parties and cooperative agreements between the Brokers, except to the extent Broker has
613    retained such fees from the escrowed funds. This Contract shall not modify any MLS or other offer of compensation
614    made by Seller or Listing Broker to Cooperating Brokers.

615*   ___Elizabeth Leeds/Susan Krutzler___              ___Vadim Yushkevish___
616    Cooperating Sales Associate, if any                Listing Sales Associate

617*   ___Leeds Intl Realty, LLC/United Realty Group, Inc___    ___VADI/Alpha Real, LIC___
618    Cooperating Broker, if any                         Listing Broker

16

- **On 2/17/2021,** the first verifiable step in arranging the sham sale occurred. The Waiver of Right of First Refusal document from the Association was executed and notarized. This document is required by the Association and a common form required by many condominium associations.  The purported Association Director, Mr. Leonard Kossan, completed the document and it contains red flags. For example, the purchase contract is correctly identified as dated 2/21/2021. However, the Waiver of First Refusal document was signed and notarized on 2/17/2021, four (4) days before the executed purchase and sale contract even existed.

- **On 2/18/2021,** Alexander Domb, Esq. and his closing company, Quality Title Company, AKA Quality Title Agency, Inc., received a wire in the amount of $180,000.00 from purported buyer IME Watchdog. The wire originated from what appears to be a business banking account with Iberia Bank from Ms. Levi's NY law firm Daniella Levi & Associates, P.C. It is unclear at this point if Ms. Levi was the intended true buyer or if her law firm was instead representing a confidential, undisclosed client. Once again, the purchase contract identified the buyer as IME Watchdog, Inc. – not Daniella Levi's NY law firm Daniella Levi & Associates, P.C. (a different entity).

- I concur with Robert M. Schwartz's findings that had the Closing/Title Agent exercised even a minimal amount of due diligence/investigation they would have become immediately aware that there were substantial red flags that warned them that the sale was a fraudulent transaction. These 17 red flags include (but are not limited to) those set forth in the expert reports of Robert M. Schwartz.

- Additional red flags were produced by Defendant Levine consisting of direct communications between Defendant Mangushev and the Buyer's attorney, Alexander Domb, concerning the payoff statement, a demand letter from Domb threatening litigation if the sale did not close, and communications between Defendant Levine and Alexander Domb wherein Defendant Levine states he will "prepare [an operating agreement]" for TP 5507, LLC or "submit an affidavit"

**From:** Svyatoslav Mangushev <svyatoslavmangushev_trumppalace@protonmail.com>
**Sent:** Monday, March 22, 2021 4:08 PM
**To:** Alexander Domb, Esq. <alec@aldlaw.org>
**Subject:** 5507 Trump Palace

Good Afternoon Alexander, Please send me a copy of the Original Payoff Statement you received concerning this sale. I will like to review it ASAP.

Regards

Sent from my iPhone

---

**From:**          Alexander Domb, Esq. <alec@aldlaw.org>
**Sent:**          Monday, March 22, 2021 4:26 PM
**To:**            Svyatoslav Mangushev
**Cc:**            Scott Levine
**Subject:**       RE: 5507 Trump Palace
**Attachments:**   Scan_0407.pdf

Happy to do it, but I got it from Scott Levine.

Sincerely,

# Alexander L. Domb

---

**From:**          Scott Levine
**Sent:**          Saturday, March 20, 2021 8:27 PM
**To:**            Alexander Domb, Esq.
**Subject:**       RE Trump Palace 5507 seller's docs
**Attachments:**   Trump Palace 5507 Sellers Documents 03202021.docx; Trump 5507 Disbursement Authorization 03202021.pdf

**Importance:**    High

Alex,

I have enclosed a seller's docs for review. I believe my client has an operating agreement, if not all prepare one or I will submit an affidavit. I am still trying to determine what that fire alarm violation was I have no idea. But I believe everything been cleared with the City of Sunny Isles Beach.

Thank you for being so patient and thank you for offering to help. I got slammed this week and last Friday night my daughter and son-in-law flew into surprise me. Surprising are for our sleep between Wednesday and Friday.

I will talk to our Monday.

Very truly yours,

SCOTT S. LEVINE, ESQ.
Law Offices of Scott S. Levine, P.A.
1625 North Commerce Parkway
Suite 225
Weston, Florida 33326
Cellular: (954) 709-2583
Telephone: (954) 510-3100
Facsimile: (866) 703-5508

- **On 3/24/2021 and 3/25/2021**, Mangushev wrote three (3) checks/kickback payments from the Mangushev Irrevocable Trust totaling $155,963.83 to Defendant Yushkevich personally, despite email correspondence from Defendant Levine to Alexander Domb during the closing requesting removal of Defendant Yushkevich's commission as seller's agent on the closing statement.

From:        Scott Levine
Sent:        Monday, March 29, 2021 6:00 PM
To:          Alexander Domb, Esq.
Subject:     RE: Quality Title Company Document Attached.  This document is for
             Client file: 21-0003

Alex,

Please correct the closing statement . No commission for the seller's agent. It should only be $54,000.00 to buyer's agent.

SCOTT S. LEVINE, ESQ.
Law Offices of Scott S. Levine, P.A.
1625 North Commerce Parkway
Suite 225
Weston, Florida 33326
Cellular: (954) 709-2583
Telephone: (954) 510-3100
Facsimile: (866) 703-5508

- The listing broker, Defendant Yushkevich, waiving his commission on the closing statement, and instead, accepting payments outside of escrow (BBT check # 260 issued 3/24/2021 and BBT check # 259 for $40,000.00) are red flag kickbacks consistent with the overall fraud scheme.

- **On 3/29/2021,** Defendant Levine prepared, notarized, and recorded a Warranty Deed transferring the Subject Property to Trump Palace 2021 – 5507, LLC signed by Defendant Mangushev as "Authorized Member." The Miami-Dade County Property Appraiser designated the transaction as between "affiliated parties." Affiliated party transactions are "disqualified sales" according to the Department of Revenue's Sales Qualification Codes.[1] In other words, the sale was not at arms-length.[2] This is a significant red flag given that the Miami-Dade County Property Appraiser itself designated the transaction as disqualified as between related, affiliated parties and far below market value.

---

[1] Department of Revenue's Sales Qualification Codes.
[2] https://www.jacksonville.gov/departments/property-appraiser/search-tutorial.aspx

- **On 3/31/2021,** Defendant Mangushev received $271,515.06 (the sale proceeds) into his TP 5507, LLC account with BB&T Bank and the mortgage was satisfied. The same day, Defendant Mangushev immediately transferred the $271,515.06 to the Mangushev Irrevocable Trust Account. At the time of this transfer, the Mangushev Irrevocable Trust only had a balance of **$13,980.95**.

- **From 4/1/2021 to 5/28/2021,** Defendant Mangushev utilized the sale proceeds from the Subject Property to pay off his loan with Porsche, his Amex Bill, and paid $24,793.80 and $17,596.90 to Southeast Marine Construction toward construction at his 18950 N. Bay Road Property in Sunny Isles. Defendant Mangushev also transferred $23,600 to 1200 Federal, LLC in May 2021, $13,500 to Biscayne, LLC, $3,000 to Limar, LLC, and $5,000 to Imperial, LLC. By the end of May 2021, all of the mortgage proceeds of $1,346,535.38 had either been laundered or spent, the $271,515.06 sale proceeds had all been spent in a matter of weeks, and the Mangushev Irrevocable Trust had an ending balance of just **$2,651.04.**



- **On 4/5/2021** Mangushev filed an annual report with Florida's Division of Corporations listing IGOR ZORIN as "Authorized Member" of TRUMP PALACE 5507, LLC, thus acknowledging Mr. Zorin's remained a member of the Company all along.

---

## Similar, Prior Organized Scheme to Defraud involving Defendant Mangushev and Defendant Galanter

- According to the Broward Circuit Court's Final Judgment, two (2) quitclaim deeds drafted by Defendant Galanter on behalf of Defendant Mangushev which transferred two (2) valuable properties away from Alpha Team, LLC (an entity Mangushev was adjudicated to be removed from) were determined to be a nullity and rescinded for lack of consideration, and lack of authority of the signatory of same – Defendant Mangushev. According to Defendant Galanter's deposition testimony, she did not contact or communicate with the Inessa Pozdnyakova, the managing member of Alpha Team, LLC who was listed as a member on the company's 2017 annual report with Florida's Division of corporations, to determine whether she consented or authorized the quitclaim deeds transferring the properties away from the company and to Defendant Mangushev and his related entities. According to the affidavits of Gennady Alekseenko and Inessa Pozdnyakova, Defendant Galanter and Defendant Mangushev defrauded them in a similar fashion and Defendant Galanter made no efforts to contact them in preparing the fraudulent quitclaim deeds. The Miami-Dade Circuit Court later entered a judgment in March 2025 against Defendant Mangushev's company at the time, Alpha Anticriminal, LLC, for $916,000 stemming from Defendant Mangushev's theft of one of these properties.

---

## Related Documents and Property Deeds Prepared by Defendant Galanter and Defendant Levine

- Defendant Galanter's production indicates that she has been preparing "assignments of interest" substantially similar to the fraudulent assignment of interest in this case, along with substantially similar "minute of special meetings" on behalf of Defendant Mangushev for years, moving his real estate holdings around while litigation was pending and in some situations even after judgments were entered against Defendant Mangushev. My examination of the structuring

of the transactions at issue and the flow of money through the Mangushev Irrevocable Trust and various entities connected to Defendant Galanter leads me to conclude that Defendant Galanter was an architect of and key component in effectuating and accomplishing the fraud and concealing/transferring the funds and Defendant Mangushev's holdings.

- A review of public records also confirms Defendant Levine's involvement in recording various deeds on behalf of Defendant Mangushev and his various entities over a period of years, which also includes the preparation of a quitclaim deed during this litigation on behalf of Defendant Yushkevich, further confirming the collaboration in the conspiracy between the parties. Text messages produced by Defendant Yushkevich to Defendant Levine indicate that Defendant Yushkevich told Defendant Levine: "Tell Scott to do what he has to do to get this done" in closing the sale of the Subject Property.

---

**BBT bank records and property records uncovered concurrent fraud schemes, payment of kickbacks, and suspicious property transactions.**

- Analysis of Defendant Mangushev's bank records document that Defendant Mangushev concealed kickback payments to co-conspirators and fraudulently obtained property and profits. The bank documents, paper trail, and history of sham LLC's all connect Defendant Mangushev to the same core co-conspirators, Defendant Levine, Defendant Baturenko, Defendant Yushkevich, and Defendant Galanter. Within bank statements of Defendant Mangushev's dedicated money laundering account, The Mangushev Irrevocable Trust, fraud proceeds were funneled to sham LLC's and individuals, including Alpha Realty, Vadim Yushkevich, Biscayne, LLC, 1200 Federal, LLC, The Olympus, LLC, and Smart LLC AKA Sabrina David, Defendant Mangushev's wife. Multiple entities accomplishing the money laundering were set up by co-conspirators, including Defendant Galanter, who even incorporated an entity during this litigation on behalf of Sabrina David. According to the DBPR, Sabrina David, Defendant Mangushev's wife, is currently employed by Defendant Yushkevich's brokerage, Alpha Realty, LLC.

- Payments to Smart LLC and Sabrina David were made directly from the Mangushev Irrevocable Trust, Sky Synergy, LLC, and Limar, LLC, and

Sabrina David was added to several of Mangushev's LLCs during this litigation. Defendant Mangushev still controlled some of these accounts according to Truist Bank/BB&T records. Defendant Mangushev's 1200 Federal, LLC, now known as "Biscayne LLC," mentioned earlier in this report was also part of another questionable and suspicious real property transaction dating back to 1/13/2014 that linked Defendant Mangushev, Defendant Levine, and Defendant Galanter. As part of the 2014 scheme, a Warranty Deed was prepared by Defendant Levine transferring title from Hollywood Property, LLC to Defendant Mangushev's 1200 Federal, LLC. Defendant Levine also created the business entity, 1200 Federal, LLC in furtherance of the scheme.

- The 2014 scheme was similar to the Mr. Zorin's fraud in that the signatory to the deed prepared by Defendant Levine appeared to have no affiliation with the Seller LLC according to Sunbiz. The timeline is as follows:
    - 12/13/2013: Hollywood Property, L.L.C. formation of business.
    - 1/13/2014: Sale from BL Holdings to Hollywood Property, L.L.C. for a sale price of $1,800,000.00.
    - 5/13/2014: 1200 Federal, LLC is incorporated by Defendant Levine. The Manager of the entity is listed as Vera Mangusheva - Defendant Mangushev's elderly mother who does not reside in the United States.
    - 5/14/2014: Hollywood Property, LLC corporate filing is made with Sunbiz with Aly Gadalla and Michael Estivo as managers from Wichita, KS. Also, a name change is filed with Sunbiz from Hollywood Property, LLC to Hollywood Property Real Estate, LLC.
    - 5/23/2014: A Warranty Deed is prepared and filed by Defendant Levine. The Deed is signed by Ronny Alcalay, who is not listed on Sunbiz in any filings, and the notary is a family member/real estate agent Yaniv Alcalay. The Sale is Hollywood Property, L.L.C. to 1200 Federal, LLC for a sales price of $2,425,000.00, resulting in a paper profit of $625,000.00. The paper profit of $625,000 in four (4) months and the deed being signed by an individual not listed on Sunbiz at all is suspicious and indicia of potential fraud.
    - 7/2/2014: A Corrective Warranty Deed is filed by Defendant Levine to correct legal description. Primary legal description remains the same but appears to add part of lot 16 of St. James Park Southwest.

○ 5/26/2020: 1200 Federal, LLC registered agent is changed to Olga Galanter - Signed by Defendant Mangushev.
○ 1/12/2024: 1200 Federal, LLC name is changed to Biscayne, LLC. Signed by Sabrina David, Defendant Mangushev's wife.
○ Further investigation is required.

---

**Violations of Federal Real Estate Settlement Procedures Act (RESPA).**

• Federal law requires all parties in a real estate transaction to disclose payment of fees and commissions in a transaction. RESPA requires individuals or businesses entities who receive payment from the transaction sale or refinance to be disclosed on title closing documents. Without full disclosure, the payments are considered illegal kickbacks. Defendant Mangushev, to conceal his ongoing fraud schemes, paid co-conspirator individuals and related entities, such as Alpha Realty, LLC, Vadim Yushkevich, The Vanguard Mortgage Group, LLC, and Yuri Baturenko tens of thousands of dollars in commissions/kickbacks associated with the fraudulent mortgage and sale of the Subject Property. The payments were structured to provide profits to co-conspirators for their cooperation and assistance in the fraudulent mortgage and real estate transactions. Aside from RESPA violations, paying and accepting kickbacks is a violation of FL real estate statutes.

## EXPERT OPINIONS

## OPINION # 1: SOPHISTICATED ORGANIZED SCHEME TO DEFRAUD

Based on my experience as a Certified Fraud Investigator, bank examiner, expert witness, and review of documentation in the case file, I have identified a strong pattern of fraud related to the mortgage and sale of the Subject Property and laundering/diversion of the proceeds from the same.

This well-orchestrated scheme to defraud was accomplished by a group of real estate professionals and attorneys all working in concert. The complexity of the fraud scheme could not have been perpetrated without substantial professional knowledge of mortgage lending and real estate practices, and structuring of trusts and LLCs to conceal complex fraud, launder ill-obtained profits, and embezzle corporate assets belonging to Mr. Zorin.

Each broker and attorney substantially assisted in each layer of the scheme to defraud by either ignoring industry standards and practices, failing to conduct due-diligence, turning a blind eye to obvious signs of fraud, or actively assisting in the concealment or perpetration of the fraud.

The true facts of the scheme unfolded after I identified numerous red flags in my analysis of case discovery and public records. These findings are consistent with retained counsel's complaint, the witness testimony, identification of similarly fraudulently prepared documents, and bank record examination. The depth of this fraud has far exceeded my initial findings.

## OPINION # 2: ACTIVE PARTICIPANTS IN THE FRAUDULENT TRANSACTIONS

Defendant Mangushev, with the technical assistance of Defendant Baturenko, Defendant Levine, and Defendant Galanter, fraudulently transferred Zorin's interest in TP 5507, LLC and the Subject Property from Mr. Zorin to Mr. Mangushev in order to extract home equity and embezzle his corporate assets.

A fraudulent mortgage loan was obtained by Defendant Mangushev with the direct assistance of mortgage broker, Defendant Baturenko, through an entity they incorporated together – The Vanguard Mortgage Group, LLC. The documents and my analysis reflect that Defendant Mangushev made outright fraudulent loan application declarations to the lender, concealed materials facts, and provided manufactured/fake documents to induce the lender to grant credit. Defendant Baturenko misled the lender by filing a fraudulent LLC Sunbiz.org amendment on 12/17/2019 during the pendency of the application purporting that Defendant Mangushev was the manager of the LLC and intentionally removed Mr. Zorin as manager.

The mortgage loan proceeds were then laundered through the Mangushev Irrevocable Trust created by Defendant Galanter and Defendant Mangushev's various limited liability companies and utilized to purchase the property located at 201-213 NE 4 Court # 1-7, through Defendant Mangushev's entity, The Olympus, LLC, with the assistance of Defendant Galanter and Defendant Levine. Sabrina David, Mangushev's wife, was added as the manager of the entity on January 4, 2024, after a judgment was entered against Defendant Mangushev in Broward Circuit Court.

In furtherance of the complex fraud scheme and concealment of transaction participants, Defendant Mangushev assigned The Olympus, LLC and other entities he controls to his wife and co-conspirator, Sabrina David, who, according to Florida's Department of Business & Professional Regulation, is currently employed as a real estate sales associate by Alpha Realty, LLC - the same brokerage that listed the Subject Property for sale, and is owned and operated by Defendant Yushkevich.

Specifically, Sabrina David was added as a manager of The Olympus, LLC in January 2024, to further conceal Defendant Mangushev's interests in The Olympus, LLC or transfer his interest to avoid pending judgments.

After extracting the equity from the Subject Property, the TP 5507, LLC fraud scheme then evolved into the sale of the Subject Property in an "affiliated parties" transaction priced far below market value with the assistance of Defendant Yushkevich to list the Subject Property through his brokerage Alpha Realty, LLC, and the assistance of Defendant Levine to close the sale on behalf of Defendant Mangushev.

It is my opinion that Defendant Mangushev received the loan refinance proceeds from the Subject Property with the substantial assistance of Defendant Galanter and Defendant Baturenko. It is further my opinion that Defendant Mangushev laundered the proceeds with the substantial assistance of Defendant Galanter and Defendant Levine. It is further my opinion that Defendant Mangushev could not have sold the Subject Property without the substantial assistance of Defendant Yushkevich and Defendant Levine.

## OPINION # 3: MONEY LAUNDERING

To carry out the fraud scheme and avoid detection of banking examiners & regulators, and mortgage lenders, Defendant Mangushev, Defendant Yushkevich, Defendant Levine, and Defendant Galanter devised a plan to conceal payment of kickbacks and fraud profits. Mangushev's Irrevocable Trust became the financial vehicle to funnel fraudulently obtained funds to himself and co-conspirators. Taxable real estate commissions were paid outside of escrow to avoid IRS detection and avoid paying taxes on fraudulently obtained profits.

Mangushev obtained $1,346,535.38 in fraudulent mortgage loan refinance proceeds from TP 5507, LLC. In January 2020, Defendant Mangushev's entity, The Olympus, LLC's bank account balance was $0.00. On 1/24/2020, a substantial portion of the proceeds ($850,000.00) were wired into The Olympus, LLC bank

account controlled by Defendant Mangushev then wired to the closing agent to purchase 201-207 NE 4 Court, Units 1-7, Hallandale Beach, FL. The remaining funds Defendant Mangushev paid to himself or laundered through various other entities he controlled as detailed above.

Structuring the transfer of funds illegally obtained into another real estate purchase transaction and using funds that were intentionally placed into The Olympus, LLC bank account, is consistent with the definition of money laundering. According to the FBI's website, the FBI defines criminal money laundering to include converting illicit proceeds into clean funds by purchasing real estate.

In other words, Defendant Mangushev intentionally disguised the true source of the funds that traveled into bank accounts he controlled to make it appear as legitimate real estate transactions. To complete the fraud, real estate attorney Defendant Levine was responsible for the closing, as evidenced by the Warranty Deed filed on 2/11/2020.

## OPINION #4: REAL ESTATE SETTLEMENT PROCEDURES ACT (RESPA) AND FL REAL ESTATE LICENSING VIOLATIONS

Defendant Mangushev's bank account records and checks issued to co-conspirators document that contemporaneous to key transactions he paid illegal kickbacks, real estate commissions, and referral fees (federal regulation Section 8a and Section 8b) to intentionally conceal fraud from banks, lenders, and victims of his mortgage and real estate fraud scheme. According to consumerfinance.gov, violations of federal RESPA regulations may include a fine up to $10,000.00 and up to one year in jail. The case file reflects that Defendants Mangushev and Yushkevich violated FL real estate licensing regulations by paying and accepting kickbacks, real estate commissions, and referral fees. It is my opinion that the fraud scheme could not have been accomplished without substantial professional knowledge by Defendant Levine of real estate practices, and substantial knowledge and assistance by Defendant Galanter in the structuring of trusts and LLCs to conceal complex fraud, and launder ill-obtained profits.

The case file indicates that each broker, attorney, and co-conspirator substantially assisted in each layer of the scheme to defraud by either ignoring industry standards and practices, failing to conduct due-diligence, turning a blind eye to obvious signs of fraud, or actively assisting in the concealment or perpetration of the fraud.

Affidavit and Report prepared by:

Curtis L. Novy, CFI
curtnovy@gmail.com
FISIntel.com | CA PI Lic. # 188926 | CA Broker # 01108665

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of RIVERSIDE
On JULY 08, 2025 before me NAYAN P GHELANI Notary Public,
personally appeared CURTIS L NOVY
who proved to me on the basis of satisfactory evidence to be the person(s)
whose name(s) is/are subscribed to the within instrument and acknowledged
to me that he/she/they executed the same in his/her/their authorized capacity(ies),
and that by his/her/their signature(s) on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.
I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal. _____

NAYAN P. GHELANI
Notary Public - California
Riverside County
Commission # 2507899
My Comm. Expires Jan 20, 2029

A notary public or other officer completing this certificate
verifies only the identity of the individual who signed the
document to which this certificate is attached, and not the
truthfulness, accuracy, or validity of that document.

State of California, County of RIVERSIDE

Subscribed and sworn to (or affirmed) before me

on this 08 day of JULY , 2025

by CURTIS L, NOVY

proved to me on the basis of satisfactory evidence

to be the person(s) who appeared before me.

Signature: _____



NAYAN P. GHELANI
Notary Public - California
Riverside County
Commission # 2507899
My Comm. Expires Jan 20, 2029